J-A23007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: N.R.L., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 404 WDA 2018 |

Appeal from the Order February 16, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000008-2016

| | | |
|---|---|---|
| IN RE: C.M.K., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 405 WDA 2018 |

Appeal from the Order February 16, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000009-2016

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    FILED JANUARY 14, 2019

K.C. ("Mother") appeals from the orphans' court's February 16, 2018

orders granting the petition of the Allegheny County Office of Children, Youth,

and Families ("CYF" or "Agency") to involuntarily terminate her parental rights to her minor daughters, N.R.L.[1] and C.M.K.[2]  After careful review, we affirm.

N.R.L. was born in January 2009, and C.M.K. was born in August 2011. The family has been known to CYF since February 2010 due to issues with substance abuse, domestic violence, and reports that Mother was not able to properly and safely care for N.R.L.  C.M.K. and N.R.L. were removed from Mother's care on June 28, 2014, after CYF received reports that Mother had left C.M.K. with an inappropriate caregiver.

Following a shelter care hearing, C.M.K. was to be returned to Mother, but remained in CYF's custody after both parents tested positive for alcohol after court.  C.M.K. was returned to Mother during July 2014, but she was

---

[1]  On the same date, the orphans' court denied CYF's petition seeking to terminate the parental rights of J.K.-T., the biological father of C.M.K.  We address CYF's appeal of the orphans' court's February 16, 2018 order relating to J.K.-T. in a separate memorandum.  The orphans' court previously involuntarily terminated the parental rights of J.M.L., the biological father of N.R.L.  J.M.L. did not appeal of that order, nor is he a party to the instant appeal.

[2]  Mother filed a single notice of appeal from the separate orders entered at different action numbers relating to N.R.L. and C.M.K. respectively.  Our Supreme Court recently held that separate notices of appeal must be filed where appeals have been taken from more than one trial court docket. See Commonwealth v. Walker, 185 A.3d 969, 977 (Pa. 2018) ("Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.  The failure to do so will result in quashal of the appeal.")  However, since that holding applies prospectively from the date of the High Court's decision, June 1, 2018, we do not quash the instant appeals.

removed from Mother's care approximately one month later. The court adjudicated N.R.L. and C.M.K. dependent on September 29, 2014. The sisters live together in a pre-adoptive foster home.

In October 2014, Mother was arrested on drug charges and incarcerated in the Allegheny County jail. C.M.K. remained in placement through January 2016,[3] when CYF filed its first petitions seeking to involuntarily terminate Mother's parental rights to both children. The court convened hearings on the petitions on May 13, 2016, and August 5, 2016. At the hearing, Eric Bernstein, Psy.D., a child psychologist who had performed evaluations of the family, and Veronica Shannon, a CYF caseworker, testified for CYF. Mother testified on her own behalf.

Additionally, Mother presented the testimony of Neil Rosenbloom, Ph.D., a psychologist who had evaluated the family; Julia Ofrichter, an outpatient therapist at Mercy Behavioral Health; Angela Terenzio, a social worker at Second Chance; and Karen Hadix, an outpatient therapist employed by Three Rivers Adoption Center. C.M.K.'s counsel presented the testimony of Maggie Swartzfager, a therapist employed at the Youth Advocate Program, and Dawn R. Paul, an elementary school teacher. Following the hearing, the court denied

---

[3] Permanency review hearings were held in February 2015, May 2015, June 2015, August 2015, November 2015, February 2016, and August 2016.

both the petitions as to Mother and C.M.K.'s father, and granted the petition as to N.R.L.s' father.[4]

CYF re-filed its petitions seeking to involuntarily terminate the parental rights of Mother. The court convened hearings on the petitions on October 27, 2017, October 31, 2017, and January 23, 2018.[5] CYF presented the testimony of Police Officers William J. Fuller and Brian Taslov; Police Detective Joseph Brown; Michelle Dobias, CYF caseworker; Dr. Eric Bernstein; Danielle Lefevre; Scott Cunningham; and Maggie Swartzfager. Additionally, the court admitted into evidence transcripts of the prior termination hearings. On February 16, 2018, the court granted CYF's petition as to Mother.

Mother filed a notice of appeal along with her statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Mother raises the following issues for our review:

> I. Whether the trial court erred and/or committed a fatal error and/or abused its discretion by finding that [CYF] had met their burden of proof by clear and convincing evidence that the parental

---

[4] CYF appealed the denial of its termination petition to this Court, but withdrew its appeal on January 10, 2017. See 1489 WDA 2016. However, the concomitant appeals docketed at 1486 WDA 2016 and 1487 WDA 2016 were not withdrawn, and this Court affirmed the orphans' court's finding that CYF did not make reasonable efforts to finalize the permanency plan for C.M.K. See In re C.K., 165 A.3d 935 (Pa.Super. 2017).

[5] At the hearings, the legal interests of N.R.L. and C.M.K. were represented by Attorney Rebecca Heaton Hall. See In re T.S., 192 A.3d 1080, 1082 (Pa. 2018) (reiterating, in contested termination of parental rights proceedings, 23 Pa.C.S. § 2313(a) requires appointment of counsel to represent child's legal interests, i.e., child's preferred outcome).

rights of [Mother] should be terminated pursuant to [23 Pa.C.S. § 2511(a)(2)]?

II. Whether the trial court erred and/or committed a fatal error and/or abused its discretion by finding that [CYF] had met their burden of proof and proved by clear and convincing evidence that terminating the parental rights of [Mother] would best meet the needs and welfare of N.R.L. and C.M.K. both now and in the future as prescribed by [23 Pa.C.S. § 2511(b)]?

Mother's brief at 1 (unnecessary capitalization and suggested answers omitted).

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). To affirm, we need only agree with any one of the subsections of 2511(a), as well as subsection (b). See In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc).

As the trial court terminated Mother's rights under § 2511(a)(2), we focus our analysis on subsection (a)(2) and (b). Those subsections of 23 Pa.C.S. § 2511 provide:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." In Interest of Lilley, 719 A.2d 327, 330 (Pa.Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. In re Z.P., 994 A.2d 1108, 1117 (Pa.Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. Id.

Mother contends that clear and convincing evidence does not support the termination of her rights under § 2511(a)(2). Specifically, she blames CYF for her inability to remedy her parenting incapacity. The crux of this claim is that the service agency which provided trauma-based family therapy bore a high turnover rate. Mother's brief at 8-9. Essentially, she argues that, had CYF insured that the family received family therapy in a reasonable amount of time, she would have been able to accomplish reunification with N.R.L. and C.M.K. Id. at 11-12. Mother's clam is unpersuasive.

With regard to the evidence introduced at the hearing, the trial court observed:

First, CYF established that Mother is again involved in a romantic relationship that involves domestic violence. Mother has been in a long term relationship with her boyfriend, S.M. At Mother's evaluation in August 2017, Mother did not disclose any domestic violence in her relationship with S.M. However, earlier in 2017, Mother called the police to report an incident of domestic violence identifying S.M. as the perpetrator. Mother informed the responding officer that she and S.M. had been out drinking and got into an argument on the way home. Mother reported that S.M. threatened to crash the car to kill them both and then proceeded to crash his vehicle into a parked car.

Second, and even more importantly, CYF established that Mother fails to understand how prior domestic violence and the potential for future domestic violence affects [N.R.L. and C.M.K.] emotionally. Mother minimized [N.R.L.]'s complaints about observing arguments between Mother and S.M. Dr. Bernstein testified that "on a basic level, [the minimization] calls into question [Mother's] appreciation for [N.R.L.]'s sensitivity." Mother began attending family therapy in May 2017. She attended six of fifteen scheduled appointments. Mother brought S.M. to a family therapy session with [N.R.L. and C.M.K.]. As a result, [N.R.L.] refused to participate in sessions with Mother. The service provider ultimately discharged Mother as a client because of failure to attend.

Trial Court Opinion, 5/14/18, at 6.

Thus, the record substantiates the conclusion that Mother's repeated and continued incapacity – namely, her inability to address the domestic violence concerns that had so affected the children – has caused N.R.L. and C.M.K. to be without essential parental control or subsistence necessary for their physical and mental well-being. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa.Super. 2003). Notwithstanding Mother's attempt to shift responsibility for her failures, the record supports the conclusion that she is unable to recognize the dangers that domestic violence possess to her and her daughters on the most basic level. See id. As Mother will not remedy

this situation, the certified record supports the trial court's finding that CYF established the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(2).

Next, we consider whether the needs and welfare of N.R.L. and C.M.K. will be met by the termination of Mother's parental rights. See Z.P., supra at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. Id. Ultimately, the concern is the needs and welfare of a child. Id. Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. In re: K.Z.S., 946 A.2d 753, 763 (Pa.Super. 2008).

We have noted:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Z.P., supra at 1121 (quoting In re C.S., 761 A.2d 1197, 1202 (Pa.Super. 2000)). Love between a parent and child is not the sole determining factor,

and love alone is not enough.  In re J.L.C., 837 A.2d 1247, 1249 (Pa.Super. 2003).  The court may also emphasize the safety needs of the child.  K.Z.S., supra at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).

As it relates to the trial court's needs and welfare analysis, the court observed:

> In this matter, the evidence amply supported the [c]ourt's conclusion that termination of Mother's parental rights served the Children's needs and welfare.  At the conclusion of the hearing, [N.R.L.] was 8 years old and had been in placement since age 5, and [C.M.K.] was 6 years old and had been in placement since age 3.  The Children have been thriving in a safe and stable environment for the past three years.  They have developed strong bonds with their foster parents and foster sister.
>
> Dr. Bernstein testified that both of the Children appear to have a bond with Mother.  However, he expressed concerns with the health of each child's bond with Mother.  Dr. Bernstein ultimately concluded that it was in the Children's best interests to move forward with termination of parental rights.  In making this recommendation, Dr. Bernstein pointed to Mother's "history of [] volatility and explosiveness" and "her accompanying engagements in domestic violence and/or acting out behavior."  Dr. Bernstein also expressed concern regarding how Mother would support the Children's feelings and safety if they were placed in her care.  He expressed particular concern about how Mother would support the Children should there ultimately be any future domestic violence.

Trial Court Opinion, 5/14/18, at 7-8.

Here, Mother claims that the court abused its discretion by determining that the needs and welfare of the children would be met by the termination of her parental rights.  Mother's brief at 13.  Mother contends that she had a

close relationship with the children which included unsupervised visitation, and that if her rights were terminated, her daughters would lose an important relationship. See id. at 13-14. Mother's arguments warrant no relief.

As noted above, the evidenced adduced during the hearings established that while Mother had a bond with her daughters, particularly with C.M.K., it was not a healthy bond, especially where Mother continued to subject the children to romantic relationships where domestic violence was a prevailing concern. In comparison, foster parents, foster sibling, and the children had a strong and healthy bond, and the family provided for the needs and welfare of both N.R.L. and C.M.K. See N.T., 10/27/17 at 97; N.T., 10/31/17, at 84-86, 91-92. As we observed in In re A.S., 11 A.3d 473, 483 (Pa.Super. 2010), "the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." In light of the risks that Mother's behavior presents to the children and the beneficial relationships that the children share with their foster family, it is obvious that their need for stability and permanency would be best served by adoption. Thus, on this record, clear and convincing evidence supports the trial court's termination of Mother's parental rights with respect to § 2511(b), where adoption would best serve the developmental, physical and emotional needs and welfare of N.R.L. and C.M.K.

For all of foregoing reasons, we affirm the decree terminating Mother's parental rights to N.R.L. and C.M.K. on the basis of § 2511(a)(2), and (b) of the Adoption Act.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2019